IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| HONG KONG YU'EN E-COMMERCE CO. LIMITED,<br><br>　　　　　Plaintiff,<br><br>v.<br><br>THE INDIVIDUALS, CORPORATIONS, LIMITED LIABILITY COMPANIES, PARTNERSHIPS AND UNINCORPORATED ASSOCIATIONS IDENTIFIED IN SCHEDULE "A" HERETO,<br><br>　　　　　Defendants. | Case No.: 1:25-cv-12132<br><br>**COMPLAINT FOR TRADEMARK INFRINGEMENT**<br><br>**JURY TRIAL DEMANDED** |

HONG KONG YU'EN E-COMMERCE CO. LIMITED, ("Plaintiff"), by and through its counsel, the Bayramoglu Law Offices, LLC, submits the following Complaint against the individuals, corporations, limited liability companies, partnerships and unincorporated associations identified in Schedule "A" hereto (collectively "Defendants"), which is attached hereto as **Exhibit 2** and hereby alleges as follows:

## INTRODUCTION

1. Plaintiff established its brand (the "Brand") in 2017, which focuses on women's fashion apparel and serves consumers in the United States and worldwide. Since launching the Brand, Plaintiff has invested significant time, financial resources, and corporate efforts to promote, market, develop, and position the Brand as a high-quality and reputable source for women's fashion apparel, accessories, and related products.

2. As part of its brand promotion, development, and marketing efforts, Plaintiff obtained federal registration from the United States Patent and Trademark Office (the "USPTO")

for multiple trademarks related to its brand (the "Brand Trademarks"). Attached as **Exhibit 1** is a true and accurate copy of the United States Registration Certificate issued by the USPTO for the Brand Trademark.

3. The Brand Trademark is valid, subsisting, and in full force and effect. Furthermore, the Brand Trademark has been used exclusively and continuously by the Plaintiff, some for many years, and has never been abandoned. The registration of the Brand Trademark serves as *prima facie* evidence of its validity and of the Plaintiff's exclusive right to use the Brand Trademark pursuant to 15 U.S.C. § 1057(b).

4. Plaintiff has filed this action to address e-commerce store operators who exploit the Plaintiff's reputation and goodwill by offering for sale and selling products, including clothing, accessories, and other merchandise, through the unauthorized use of the Brand Trademark (the "Counterfeit Products").

5. Defendants set up e-commerce stores operating under one or more Seller Aliases that advertise, offer for sale, and sell Counterfeit Products to unsuspecting consumers through the unauthorized use, employment, digital incorporation, or other online display of the Brand Trademark. The infringing conduct of the Defendants occurred on the same online sale platform (the "Platform").

6. Defendants deceived consumers into believing that the products they purchased were genuine goods made by the Plaintiff. They did this by using the Brand Trademark without permission and supplying Counterfeit Products from one or more common manufacturing sources based in the People's Republic of China.

7. The Defendants operate online stores under Seller Aliases that share unique, related identifiers, establishing a logical connection between them.

8. Defendants' sale of the Counterfeit Products, using the Brand Trademark without authorization, originates from the same transaction, series of transactions, or occurrences.

9. In addition, Defendants have attempted to avoid and mitigate their liability by operating under one or more Seller Aliases to conceal their identities and the full scope and interworking of their counterfeiting operation.

10. Counterfeiters like Defendants monitor and post updates on any attempts by a company to enforce its intellectual property rights on the website www.SellerDefense.CN, which has been recognized by numerous courts in this judicial district as a platform used by alleged infringers to report, disclose information related to, and advise infringers of the need to liquidate online platform accounts facing enforcement actions.

11. This is not Plaintiff's first action commenced in this judicial district to enforce the Brand Trademark. Plaintiff has done so to combat Defendants' unauthorized use of the Brand Trademark to promote its sales of Counterfeit Products.

12. Plaintiff has also initiated this action to protect the consumer and business goodwill linked to its Brand. Additionally, Plaintiff has filed this case to safeguard unknowing and/or unsophisticated consumers, including those in Illinois and within this judicial district, from purchasing Counterfeit Products that are used with the Brand Trademark without permission.

13. Allowing defendants to continue using the Brand Trademark without authorization to promote and sell the counterfeit products has already caused and will continue to cause irreparable harm to Plaintiff through consumer confusion, dilution, loss of goodwill, and damage to the value and viability of the Brand Trademark. This entitles the plaintiff to seek both injunctive relief and monetary damages.

## JURISDICTION AND VENUE

14. This Court has original subject matter jurisdiction over the claims in this action pursuant to the provisions of the Lanham Act, 15 U.S.C. § 1051, *et seq.*, 28 U.S.C. § 1338(a)-(b) and 28 U.S.C. § 1331.

15. Venue is proper in this Court pursuant to 28 U.S.C. § 1391

16. This Court may properly exercise personal jurisdiction over Defendants since each of the Defendants directly targets business activities toward consumers in the United States, including in Illinois, through at least the fully interactive e-commerce stores (the "Online Marketplaces") operating under the seller aliases identified in Schedule "A" attached hereto (the "Seller Aliases").

17. Defendants have targeted sales to consumers in Illinois by setting up and operating the Online Marketplaces using one or more Seller Aliases displaying the Brand Trademark without authorization to incite purchases of the Counterfeit Products in Illinois.

18. Defendants accept payment for purchases in United States currency and/or funds from United States bank accounts.

19. Defendants have sold Counterfeit Products to residents of Illinois.

20. Each of the Defendants is committing tortious acts within this judicial district by engaging in interstate commerce that causes significant harm in Illinois.

## THE PARTIES

21. Plaintiff is organized under the laws of the People's Republic of China.

22. The true identities of the Defendants are not yet known because they operate under the Seller Aliases listed in Schedule A.

23. The Counterfeit Products cannot be individually manufactured by pattern and size

because they are women's textile items.

24. The Defendants are likely using the same manufacturing sources because these items need to be produced at scale to undercut the Plaintiff.

25. Based on information and belief, Defendants reside and/or operate in the People's Republic of China or other related foreign jurisdictions.

26. Defendants, either alone or together, operate one or more Online Marketplaces under the Seller Aliases listed in Schedule "A" attached as **Exhibit 2.**

27. The methods used by Defendants to conceal their identities and the full scope of their operations make it nearly impossible for Plaintiff to uncover Defendants' true identities and how their counterfeit network operates.

28. If the Defendants provide additional credible information about their identities, the Plaintiff will take the necessary steps to amend the Complaint and proceed accordingly.

## THE VALUE OF PLAINTIFF'S BRAND TRADEMARKS

29. The Brand Trademark is exclusive to Plaintiff and appears prominently in Plaintiff's marketing and promotional materials for the Brand.

30. The Brand has long been popular globally

31. Plaintiff has spent millions of dollars each year on advertising, promoting, and marketing the Brand and the Brand Trademark.

32. The Brand products have garnered extensive unsolicited publicity due to their high quality and innovative designs.

33. The Brand and its trademark have gained widespread recognition across the United States, including in Illinois.

34. Plaintiff operates an e-commerce website where it promotes and sells authentic

Brand products at BrandName.com. Sales of genuine Brand products through Plaintiff's website constitute a significant part of the company's business.

35. The Brand Trademark is distinctive when applied to the company's Brand-identified products, which signifies to the purchaser that such products come from Plaintiff, are genuine merchandise offered for sale by the company, and are manufactured to the company's quality standards.

36. The Brand Trademark has gained fame and recognition, which has only increased its inherent distinctiveness. Therefore, the goodwill associated with the Brand Trademark is of immeasurable and priceless value to Plaintiff.

37. No Defendant is authorized or licensed to use the Brand Trademark in connection with offering for sale or the sale of any products, including the Counterfeit Products.

38. Plaintiff is forced to hire and compensate the below-signed counsel to enforce its Trademark.

## **DEFENDANTS' UNLAWFUL CONDUCT**

39. The success of the Brand has resulted in significant counterfeiting of the Brand Trademark.

40. In recent years, Plaintiff has identified many fully interactive e-commerce stores offering counterfeit products on online marketplace platforms such as Walmart, Amazon, eBay, AliExpress, Alibaba, Wish.com, Walmart, Etsy, DHgate, and Temu, including those operated by the Defendants under their Seller Aliases.

41. The Identified Seller Aliases target consumers in Illinois, within this judicial district, and across the United States.

42. According to a U.S. Customs and Border Protection (CBP) report, in 2021, CBP

seized over 27,000 goods with intellectual property rights (IPR) violations, totaling over $3.3 billion—a $2.0 billion increase from 2020. The report, titled "*Intellectual Property Rights Seizure Statistics, Fiscal Year 2021*, U.S. Customs and Border Protection," is attached as **Exhibit 4.**

43. Of the 27,000 IPR seizures, over 24,000 involved international mail and express courier services, rather than containers, with most originating from China and Hong Kong.

44. Third-party service providers like those used by Defendants do not sufficiently verify new sellers' identities, enabling counterfeiters to "routinely use false or inaccurate names and addresses when registering with these e-commerce platforms." *see* report on "Combating Trafficking in Counterfeit and Pirated Goods" prepared by the U.S. Department of Homeland Security's Office of Strategy, Policy, and Plans (Jan. 24, 2020)(attached hereto as **Exhibit 5**) (on "at least some e-commerce platforms, little identifying information is necessary for a counterfeiter to begin selling" and recommending that "[s]ignificantly enhanced vetting of third-party sellers" is necessary.)

45. Counterfeiters reduce the risk of getting caught and their websites being removed from an e-commerce platform by setting up multiple virtual storefronts in advance.

46. Since platforms generally do not require a seller on a third-party marketplace to identify the underlying business entity, counterfeiters can create multiple profiles that may seem unrelated, even though they are often owned and operated by the same entity.

47. E-commerce platforms create bureaucratic or technical hurdles in helping brand owners to locate or identify sources of counterfeits and counterfeiters.

48. Defendants concurrently employ and benefit from substantially similar advertising and marketing strategies.

49. Defendants facilitate sales by designing the e-commerce stores operating under the

Seller Aliases so that they appear to unknowing consumers to be authorized online retailers, outlet stores, or wholesalers, which is enhanced by their unauthorized use of the Brand Trademarks.

50. E-commerce stores operating under the Seller Aliases appear sophisticated and accept payment in United States currency and/or funds from United States bank accounts via credit cards, Alipay, Amazon Pay, Walmart Pay, and/or PayPal.

51. E-commerce stores operating under the Seller Aliases include content and images that make it very difficult for consumers to distinguish such stores from an authorized retailer.

52. Plaintiff has not licensed or authorized Defendants to use the Brand Trademark.

53. None of the Defendants are authorized to sell or resell authentic Brand products.

54. Defendants deceive unaware consumers by using the Brand Trademark without permission within their content, text, Search Engine Optimization ("SEO") terms, and/or meta tags on their Online Marketplaces.

55. E-commerce store operators like Defendants often commit fraud when creating identities, such as Seller Aliases, by providing false, misleading, or incomplete information to e-commerce platforms to hide their real identities and the scope of their activities.

56. Although the Defendants operate under multiple fake Seller Aliases, their Online Marketplaces often share unique identifiers. These include templates with common design elements that commonly omit contact information or other details to identify the Defendants or their other seller aliases.

57. The Marketplaces also show shared features such as similar registration patterns, payment methods, check-out processes, keywords, advertising strategies, pricing and quantity similarities, consistent grammatical errors and misspellings, and the use of identical text and images.

58. The Counterfeit Products sold through these Seller Aliases show similar irregularities and signs of counterfeiting, suggesting they come from a common source and that the Defendants are connected.

59. Given the nature of the Counterfeit Products involved in the defendants' scheme, it is nearly impossible for them to operate on the scale they do through online marketplaces without using the same or a very similar supply chain from common manufacturing sources.

60. Counterfeit products are not of a kind or nature that allow a single defendant to manufacture and supply them on a meaningful scale without using the resources of a commercial manufacturing source.

61. E-commerce store operators like the Defendants are constantly communicating with each other and regularly participating in qq.com chat rooms and on websites such as www.SellerDefense.cn and kuajingvs.com to discuss tactics for managing multiple accounts, avoiding detection, the status of ongoing intellectual property cases, and potential new enforcement lawsuits.

62. Counterfeiters like Defendants often use multiple Seller Aliases and payment accounts to continue their operations despite Plaintiff's enforcement efforts.

63. E-commerce store operators like Defendants maintain offshore accounts and regularly transfer funds from their U.S. financial accounts to offshore accounts outside this Court's jurisdiction to avoid paying any monetary judgment awarded to the Plaintiff.

64. Analysis of transaction logs from similar cases indicates that offshore counterfeiters frequently transfer funds from U.S.-based accounts to offshore accounts beyond this Court's jurisdiction.

65. Based on information and belief, Defendants are actively working together to

knowingly and willfully manufacture, import, distribute, offer for sale, and sell Counterfeit Products in the same transaction, occurrence, or series of transactions or occurrences that use, without authorization, the Brand Trademarks.

66. Defendants, without any authorization or license from Plaintiff, knowingly and willfully used and continue to use the Brand Trademark in connection with advertising, distributing, offering for sale, and selling Counterfeit Products into the United States via the Internet.

67. Defendants' unauthorized use of the Brand Trademark in connection with advertising, distributing, offering for sale, and selling Counterfeit Products has caused, and is likely to cause, confusion, mistake, and deception among consumers. It also irreparably harms Plaintiff by damaging the company's goodwill, reputation, and the value of its Brand Trademark.

## COUNT I

**TRADEMARK INFRINGEMENT AND COUNTERFEITING (15 U.S.C. § 1114)**

68. Plaintiff hereby re-alleges and incorporates by reference the allegations set forth in the Paragraphs 1 through 67, above.

69. This is a trademark infringement action brought against Defendants for their unauthorized use in commerce of Plaintiff's Brand Trademark in connection with offering for sale, sale, distribution, and/or advertising the Counterfeit Products.

70. Plaintiff's Brand Trademark is a highly distinctive mark. Consumers have come to expect the highest quality from products offered, sold, or marketed bearing Plaintiff's Brand and/or the Brand Trademark.

71. Plaintiff is the exclusive owner of the Brand Trademark. Plaintiff's Registration issued by the USPTO is valid, current, and in full force and effect. Attached hereto as **Exhibit 1** is

a true and correct copy of the United States Registration Certificate issued by the USPTO for the Brand Trademark. Attached hereto as **Exhibit 3** provides links to infringing uses of the Modlily Trademark on each of the Defendants' Online Stores.

72. Defendants have sold, offered to sell, marketed, distributed, and advertised, and are still selling, offering to sell, marketing, distributing, and advertising the Counterfeit Products using the Brand Trademark without Plaintiff's authorization, license, or permission to do so.

73. The Defendants are aware of the Plaintiff's rights in the Brand Trademark and are intentionally infringing by using the Brand Trademark to sell, promote, distribute, and offer for sale the Counterfeit Products.

74. Defendants' deliberate, intentional, and unauthorized use of the Brand Trademark can be inferred from their sale of the Counterfeit Products, which closely resemble authentic Brand products offered by Plaintiff but are sold at a lower price and are of inferior quality.

75. The deliberate and intentional use of the Brand Trademark to sell, promote, distribute, and offer for sale the Counterfeit Products is likely to cause confusion, mistake, and deception about the origin and quality of the Counterfeit Products among the public and consumers seeking authentic Brand products from Plaintiff.

76. Defendants' activities constitute willful trademark infringement and counterfeiting under Section 32 of the Lanham Act, 15 U.S.C. § 1114.

77. Plaintiff has no adequate remedy at law, and if the Defendants' actions are not stopped, the Plaintiff will continue to suffer irreparable harm to its reputation and the goodwill associated with its well-known Brand Trademarks.

78. The injuries and damages suffered by Plaintiff have been directly and proximally caused by Defendants' unauthorized use, advertisement, promotion, offer to sell, and sale of the

Brand Trademarks in connection with the Counterfeit Products.

79. Based on the foregoing, Plaintiff is entitled to actual damages, disgorgement of the Defendants' profits, and the costs of the suit.

80. Plaintiff is also entitled to entry of temporary, preliminary, and permanent injunctive relief against Defendants.

81. To the extent authorized under the Lanham Act, an award of statutory damages for Defendants' sale of the Counterfeit Products using the Brand Trademark intentionally and willfully without Plaintiff's authorization.

82. Additionally, the Plaintiff is entitled to recover attorneys' fees and costs due to the Defendants' intentional and willful infringement of the Brand Trademark, making it an exceptional case.

## COUNT II

## UNFAIR COMPETITION (15 U.S.C. § 1125(a))

83. Plaintiff hereby re-alleges and incorporates by reference the allegations set forth in the Paragraphs 1 through 67, above.

84. Plaintiff is the exclusive owner of the Brand Trademark.

85. Defendants have sold, offered to sell, marketed, distributed, and advertised, and are still selling, offering to sell, marketing, distributing, and advertising the Counterfeit Products using the Brand Trademark without Plaintiff's authorization, license, or permission to do so.

86. Based on information and belief, Defendants are aware of Plaintiff's rights in the Brand Trademark. They are knowingly infringing and intentionally using the Brand Trademark to sell, advertise, distribute, and offer for sale the Counterfeit Products.

87. The defendants' deliberate, intentional, and unauthorized use of the Brand

Trademark can be inferred from their sale of the Counterfeit Products, which closely resemble authentic Brand products offered by the plaintiff but are sold at a lower price and are of inferior quality.

88. Defendants' willful, intentional, and unauthorized use of the Brand Trademarks to sell, advertise, distribute, and offer for sale the Counterfeit Products is likely to cause confusion, mistake, and deception about the origin and quality of the Counterfeit Products among the public and consumers who want to buy genuine Brand products from the Plaintiff.

89. Defendants' conduct amounts to unfair competition in violation of 15 U.S.C. § 1125(a)(1)(B).

90. Plaintiff has no adequate remedy at law, and if the Defendants' actions are not enjoined, the Plaintiff will continue to suffer irreparable harm to its reputation and the goodwill associated with its well-known Brand Trademarks.

91. The injuries and damages experienced by Plaintiff were directly and proximately caused by Defendants' unauthorized use, advertisement, promotion, offer to sell, and sale of the Brand Trademark in connection with the Counterfeit Products.

92. Based on the foregoing, Plaintiff is entitled to actual damages, disgorgement of the Defendants' profits, and the costs of the suit.

93. Plaintiff is also entitled to entry of temporary, preliminary, and permanent injunctive relief against Defendants.

94. Additionally, Plaintiff is entitled to recover attorneys' fees and costs as an exceptional case due to Defendants' intentional, willful violation of the rights granted in and to the Brand Trademarks.

## COUNT III

### FALSE DESIGNATION OF ORIGIN (15 U.S.C. § 1125(a))

95. Plaintiff hereby re-alleges and incorporates by reference the allegations set forth in the Paragraphs 1 through 67, above.

96. The defendants' promotion, marketing, offering for sale, and sale of counterfeit products using the Brand Trademark without authorization has caused and continues to cause a likelihood of confusion, mistake, and deception among the public regarding their affiliation, connection, or association with the plaintiff, or the origin, sponsorship, or approval of the defendants' counterfeit products by the plaintiff.

97. By using the Brand Trademark with the sale of counterfeit products, the defendants create a false designation of origin and a misleading representation of fact concerning the origin and sponsorship of the counterfeit items.

98. The defendants' false designation of origin and misrepresentation of fact regarding the origin and/or sponsorship of the Counterfeit Products to the public constitute a deliberate violation of 15 U.S.C. § 1125(a)(1)(B).

99. The injuries and damages suffered by Plaintiff were, and continue to be, directly and proximately caused by Defendants' unauthorized use, advertisement, promotion, offer to sell, and sale of the Brand Trademark in connection with the Counterfeit Products.

100. Plaintiff has no adequate legal remedy, and if the Defendants' actions are not stopped, Plaintiff will continue to suffer irreparable damage to its reputation and the goodwill associated with its well-known Brand Trademark.

101. Based on the foregoing, Plaintiff is entitled to actual damages, disgorgement of the Defendants' profits, and the costs of the suit.

102. Plaintiff is also entitled to entry of temporary, preliminary, and permanent injunctive relief against Defendants.

103. Plaintiff is entitled to recover attorneys' fees and costs because this case is exceptional, due to Defendants' intentional and willful violation of the rights granted by and to the Brand Trademarks.

## COUNT IV

**VIOLATION OF ILLINOIS UNIFORM DECEPTIVE TRADE PRACTICES ACT
(815 ILCS § 510/1, et seq.)**

104. Plaintiff hereby re-alleges and incorporates by reference the allegations set forth in the Paragraphs 1 through 67, above.

105. Defendants have engaged in acts violating Illinois law, including, but not limited to, passing off their knockoff products as those of Plaintiff's Brand products through the unauthorized use of the Brand Trademark.

106. Passing off Counterfeit Products causes confusion or misunderstanding about the source of the goods, creates a false impression of an affiliation, connection, or association with genuine Brand products, falsely claims that their products are approved by the Plaintiff when they are not, and involves other conduct that promotes confusion or misunderstanding among the public.

107. Defendants' actions were done intentionally, willfully, and with knowledge of Plaintiff's rights in and to the Brand Trademark.

108. The ongoing actions of the Defendants intentionally violate the Illinois Uniform Deceptive Trade Practices Act, 815 ILCS § 510/1, et seq.

109. Plaintiff has no adequate legal remedy, and Defendants' actions have caused damage to its Brand's reputation and goodwill. Unless the Court issues an injunction, Plaintiff will continue to suffer future irreparable harm caused by the Defendants' unlawful conduct.

110. Based on the foregoing, Plaintiff is entitled to entry of temporary, preliminary, and permanent injunctive relief against Defendants.

111. Plaintiff is entitled to recover attorneys' fees and costs due to the Defendants' intentional and willful violation of the Illinois Uniform Deceptive Trade Practices Act, 815 ILCS § 510/1, et seq.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff prays for judgment against Defendants and each of them as follows:

1. That Defendants, their affiliates, officers, agents, servants, employees, attorneys, confederates, and all persons acting for, with, by, though, under, or in active concert with them be temporarily, preliminarily, and permanently enjoined and restrained from:

a. using Plaintiff's Brand Trademark or any reproductions, counterfeit copies, or colorable imitations thereof in any manner in connection with the distribution, marketing, advertising, offering for sale, or sale of any product, including within the content, text, SEO terms, and/or meta tags for their Online Marketplaces, that is not a genuine Brand product or is not authorized by Plaintiff to be sold in connection with its registered Brand Trademark;

b. passing off, inducing, or enabling others to sell or pass off any product as a genuine Brand product or any other product produced by Plaintiff by using the Brand Trademark to sell and offer for sale such products that are not Plaintiff's or not produced under the authorization, control, or supervision of Plaintiff and approved by Plaintiff;

c. committing any acts calculated to cause consumers to believe that Defendants' inferior products are those sold under the authorization, control, or supervision of Plaintiff, or are sponsored by, approved by, or otherwise connected with Plaintiff or its Brand;

d. further infringing the Brand Trademarks and damaging Plaintiff's Brand's reputation and goodwill;

e. otherwise competing unfairly with Plaintiff through the unauthorized use of the Brand Trademark in any manner;

f. shipping, delivering, holding for sale, transferring, or otherwise moving, storing, distributing, returning, or otherwise disposing of, in any manner, products or inventory sold or offered for sale through the unauthorized use of the Brand Trademark;

g. using, linking to, transferring, selling, exercising control over, or otherwise owning the Defendants' stores on Defendants' Online Marketplaces or the Platform, or any other domain name or online marketplace account that is being used to sell or is the means by which Defendants could continue to sell knockoff Brand products through the unauthorized use of the Brand Trademark; and

h. operating and/or hosting websites at the Defendants' Online Marketplaces and any other domain names registered or operated by Defendants that are involved with the distribution, marketing, advertising, offering for sale, or sale of any product through the unauthorized use of the Brand Trademark.

2. That Defendants, within fourteen (14) days after service of judgment with notice of entry thereof upon them, be required to file with the Court and serve upon Plaintiff a written report under oath setting forth in detail the manner and form in which Defendants have complied with paragraph 1 above;

3. Entry of an Order that, upon Plaintiff's request, those in privity with Defendants and those with notice of the injunction, including AliExpress, Walmart, Amazon, DHgate, eBay, Temu, and Wish, social media platforms such as Facebook, YouTube, LinkedIn, Twitter, Internet

COMPLAINT FOR TRADEMARK INFRINGEMENT         Case No. 1:25-cv-12132

search engines such as Google, Bing and Yahoo, web hosts for the Defendants' Online Stores, and domain name registrars, shall:

    a.    disable and cease providing services for any accounts through which Defendants engage in the sale of knockoff Brand products by using, without. authorization, the Brand Trademark, including any accounts associated with the Defendants listed on Schedule "A";

    b.    disable and cease displaying any advertisements used by or associated with Defendants that display the Brand Trademark; and

    c.    take all necessary steps to prevent links to Defendants' Online Marketplaces identified on Schedule "A" from displaying in search results, including, but not limited to, removing links to Defendants' domain names from any search index.

    4.    That Defendants account for and pay to Plaintiff all profits realized by them through the unauthorized use of the Brand Trademark.

    5.    An award of Plaintiff's actual damages.

    6.    An award of statutory damages against Defendants for their intentional and willful violation of the Lanham Act through their sale of the Counterfeit Products using Plaintiff's Brand Trademark to do so without authorization.

    7.    An award of enhanced statutory damages for Defendants' intentional and willful violation of the Lanham Act.

    8.    That Plaintiff be awarded its reasonable attorneys' fees based on this being an exceptional case under the Lanham Act and/or for the intentional and willful violation of the Illinois Uniform Deceptive Trade Practices Act, 815 ILCS § 510/1, et seq.

    9.    An award of Plaintiff's costs associated with commencing this action.

    10.    An award of pre-judgment and post-judgment interest as permitted by rule, statute,

law, or otherwise.

11. Award such other relief that this Court deems just and proper.

## DEMAND FOR JURY TRIAL

Plaintiff demands a trial by jury of all issues so triable pursuant to Federal Rule of Civil Procedure 38.

Dated: October 3rd, 2025                    Respectfully Submitted,


By: */s/ Joshua H. Sheskin*
Joshua H. Sheskin (FL Bar No. 6299408)
Nihat Deniz Bayramoglu (NV Bar No. 14030)
Gokalp Bayramoglu (NV Bar No. 15500)
Joseph W. Droter (Bar No. 6329630)
**BAYRAMOGLU LAW OFFICES LLC**
1540 West Warm Springs Road Ste. 100
Henderson, NV 89014
Tel: (702) 462-5973
Fax: (702) 553-3404
joshua@bayramoglu-legal.com
deniz@bayramoglu-legal.com
gokalp@bayramoglu-legal.com
Joseph@bayramoglu-legal.com
*Attorneys for Plaintiff*